* * * * * * * * * * *
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, reverses the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 * * * * * * * * * * * *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are subject to and are bound by the North Carolina Workers' Compensation Act.
2. The parties are correctly designated, and there is no question as to the mis-joinder or the non-joinder of any party.
3. The parties were subject to the North Carolina Workers' Compensation Act at the time of Plaintiff's June 17, 2000 work injury.
4. An employment relationship existed between the parties at the time of Plaintiff's June 17, 2000 work injury.
5. Plaintiff suffered a compensable injury by accident arising out of and in the course and in the scope of his employment with Defendant on June 17, 2000; however, the extent of the work injury is disputed.
6. Plaintiff's average weekly wage is $947.50, yielding the maximum compensation rate for the year 2000 of $588.00.
7. Plaintiff last worked for Defendant on or about July 13, 2002. Plaintiff continued to receive a salary from Defendant from July 27, 2002 through January 18, 2003 in the amount of $947.50 per week.
8. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit one (1) — Pre-trial Agreement; *Page 3 
 b. Stipulated Exhibit two (2) A — North Carolina Industrial Commission forms and filings;
 c. Stipulated Exhibit two (2) B — Plaintiff's medical records;
 d. Stipulated Exhibit two (2) C — Independent Medical Examination and Functional Assessment Evaluation — Record Review by Dr. Robert Williams Elkins dated May 23, 2007;
 e. Stipulated Exhibit two (2) D — Plaintiff's Discovery Responses;
 f. Stipulated Exhibit two (2) E — Medical case management correspondence and accompanying documentation dated January 17, 2002, May 6, 2002, and August 1, 2002;
 g. Stipulated Exhibit two (2) F — Plaintiff's personnel file.
 * * * * * * * * * * * ISSUES
The issues for determination are:
1. Whether Plaintiff's claim for additional benefits is time-barred, pursuant to § 97-24 of the North Carolina General Statutes and/or § 97-47 of the North Carolina General Statutes?
2. Whether Plaintiff's back condition for which he sought treatment from Dr. Scot Eric Reeg, including undergoing fusion surgery, is causally related to Plaintiff's admittedly compensable June 17, 2000 work injury?
2. Whether Plaintiff is entitled to payment for a 55 percent permanent partial impairment rating to his back?
 * * * * * * * * * * * *Page 4 
Based upon the competent and the credible evidence of record, as well as any reasonable references that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 62-years-old, and had been working for Defendant for approximately 34 years at the time of his admittedly compensable June 17, 2000 work injury.
2. Defendant employed Plaintiff as a route salesman, which job duties included delivering bread to specific locations. Plaintiff usually loaded his truck around 3:00 a.m. and worked until approximately 4:00 p.m.
3. While working for Defendant in 1998, Plaintiff injured his back during one of his delivery routes, and subsequently sought treatment from Dr. Daniel James Albright. On February 11, 1999, Plaintiff underwent a microdiscectomy surgery at the L4 level of the spine, performed by Dr. Albright. Plaintiff did not file a workers' compensation claim for this back injury.
4. Following Plaintiff's February 11, 1999 microdiscectomy surgery, Plaintiff received conservative treatment from Dr. Albright, and on March 23, 1999, Dr. Albright released Plaintiff to return to "regular work on 4/6/99."
5. Plaintiff testified that after he returned to work, he "was doing pretty good and getting the job done," and he did not have to take days off of work due to lower back problems.
6. On June 17, 2000, Plaintiff arrived at a Wal-Mart store around 4:00 a.m. in order to make a delivery. When no one came to the door to let him in, he attempted to walk around to the back of the store. While walking to the back of the store, Plaintiff fell into a manhole that was approximately five (5) to six (6) feet deep. As a result of the fall, Plaintiff sustained a laceration to his hand and felt pain in his back. *Page 5 
7. Plaintiff went inside the Wal-Mart store and called Defendant in order to send someone out to the location to assist him. Plaintiff then presented to Smithfield Urgent Care, where he received stitches to his left ring finger.
8. Plaintiff followed up with Immediate Care of Goldsboro on June 23, 2000, in order to get his sutures examined. While at Immediate Care of Goldsboro, the medical staff noted that subsequent to Plaintiff's fall, he "developed a great deal of bruising to his right leg and he is stiff and limps on it." Additionally, the medical staff noted that Plaintiff was "tender in the right perilumbar muscles and there does appear to be some swelling in this area." Plaintiff received a prescription for Motrin 800 milligrams, as well as an order to remain out of work until July 3, 2000.
9. Thereafter, Plaintiff returned to work for Defendant; however, he worked in a modified, light-duty capacity, and he did not perform all of the duties required of his regular position.
10. Prior to Plaintiff's June 17, 2000 work injury, Plaintiff was running delivery routes 20 to 25 weeks per year. Following Plaintiff's June 17, 2000 work injury, Plaintiff testified that "most of the time they [Defendant] would send somebody down there to run the route for me." After Plaintiff's June 17, 2000 work injury, Plaintiff continued to suffer with pain in his back that gradually increased over time.
11. On October 11, 2000, Plaintiff presented to Immediate Care of Goldsboro, where the medical staff noted that he was suffering from back pain, and the medical staff recommended that Plaintiff follow up with an orthopaedist for further treatment.
12. On November 8, 2000, Plaintiff began treating with Dr. William De Araujo at Goldsboro Orthopaedic Associates. After reviewing Plaintiff's previous radiological films, Dr. *Page 6 
De Araujo concluded that Plaintiff's "LS spine shows previous compression fracture with possible burst component at L2 also involving the superior end plate of L3." As a result, Dr. De Araujo prescribed Plaintiff medication, prescribed physical therapy, and ordered Plaintiff to remain out of work for two (2) weeks.
13. On December 18, 2000, Dr. De Araujo referred Plaintiff to Dr. Scot Eric Reeg of the Center for Scoliosis and Spinal Surgery in Greenville, North Carolina.
14. On January 4, 2001, Plaintiff initially presented for treatment with Dr. Reeg. After reviewing Plaintiff's previous radiological films, Dr. Reeg concluded that Plaintiff suffered from "severe disk collapse at L2-L3," and Dr. Reeg concluded that Plaintiff was a "candidate to consider a reconstructive to try to decompress his neural elements to restore some physiological balance to the lumbar region."
15. On April 10, 2001, Plaintiff followed up with Dr. Reeg, and Dr. Reeg again recommended the surgical reconstruction, due to Plaintiff's continued central back pain, and due to Plaintiff's continued left groin pain. Dr. Reeg further recommended that Plaintiff maintain permanent light-duty work restrictions, regardless whether he chose to have the surgery. In response to Dr. Reeg's recommendations, Plaintiff testified that he was hesitant to undergo the surgical reconstruction at that time, and so he continued working with Defendant in a light-duty capacity, supervising route drivers and working in the office.
16. On October 2, 2001, Dr. Reeg again evaluated Plaintiff, and noted that Plaintiff was still reluctant to undergo the reconstructive procedure. Dr. Reeg again recommended permanent light-duty work restrictions, and assigned Plaintiff a 10 percent permanent partial impairment rating to his back. *Page 7 
17. On January 10, 2002, Plaintiff returned to Dr. Reeg, at which time Dr. Reeg noted that Plaintiff had difficulty ambulating over 30 feet, that Plaintiff was losing his sagittal balance, and that Plaintiff was still requesting to delay the reconstructive procedure.
18. Subsequent to the January 10, 2002 appointment with Dr. Reeg, Defendant requested that Plaintiff undergo an independent medical evaluation with Dr. Greig Vincent McAvoy, scheduled for May 16, 2002. Dr. McAvoy gave Plaintiff a zero (0) percent permanent partial disability rating, based upon his opinion that there was no causal relationship between the July 17, 2002 reconstructive procedure performed by him and Plaintiff's June 17, 2000 work injury.
19. On June 20, 2002, Dr. Reeg responded to a request by Defendant for clarification regarding Plaintiff's back condition, relative to his workers' compensation claim. In response, Dr. Reeg described Plaintiff's back condition at that time as being "best characterized as an exacerbation of a pre-existing condition," as his "condition is one that would be susceptible to injury in the event of a fall or event."
20. On June 24, 2002, Defendant filed a Form 61, asserting Plaintiff's back condition to be unrelated to his June 17, 2000 work injury. Prior to the filing of the Form 61, Defendant paid for all of Plaintiff's medical treatment related to his June 17, 2000 work injury.
21. On July 17, 2002, Dr. Reeg performed the reconstructive procedure he previously recommended. Based upon the type of reconstructive surgery that Dr. Reeg performed on Plaintiff, Dr. Reeg assigned a 55 percent permanent partial impairment rating to Plaintiff's back. Prior to Plaintiff's reconstructive surgery, Dr. Reeg assigned a 10 percent permanent partial impairment rating to Plaintiff's back. *Page 8 
22. When questioned by both Plaintiff's counsel and by Defendant's counsel several different times, Dr. Reeg repeatedly opined that there was no causal relationship between the July 17, 2002 reconstructive procedure performed by him and Plaintiff's June 17, 2000 work injury. Dr. Reeg based his opinion primarily upon the fact that Plaintiff did not seek medical treatment for his back complaints between June 23, 2000 and October 11, 2000, and due to the extensive evidence of degenerative disease in Plaintiff's spine.
23. On May 23, 2007, Dr. Robert William Elkins performed a medical records review at Defendant's request. Dr. Elkins gave Plaintiff a zero (0) percent to five (5) percent permanent partial disability rating, pursuant to North Carolina Rating Guidelines, based upon his opinion that there was no causal relationship between the July 17, 2002 reconstructive procedure performed by him and Plaintiff's June 17, 2000 work injury. The Full Commission affords greater weight to the opinion of Dr. Elkins concerning Plaintiff's permanent partial disability rating to his back. Although Dr. Elkins never treated Plaintiff, he is a board-certified independent medical examiner, as well as a Fellow of the American Academy of Disability Evaluating Physicians.
24. Both Dr. Elkins and Dr. McAvoy, who performed the independent medical evaluation, also opined that there was no causal relationship between the July 17, 2002 reconstructive procedure performed by Dr. Reeg and Plaintiff's June 17, 2000 work injury. Both Dr. Elkins and Dr. McAvoy based their opinions primarily upon the fact that Plaintiff did not seek medical treatment for his back complaints between June 23, 2000 and October 11, 2000, and due to the extensive evidence of degenerative disease in Plaintiff's spine.
25. The Full Commission finds, based upon the greater weight of the evidence, that there was no causal relationship between the July 17, 2002 reconstructive procedure performed *Page 9 
by Dr. Reeg and Plaintiff's June 17, 2000 work injury, based upon the testimony of the medical experts, taken as a whole.
26. Defendant filed a Form 28B on February 23, 2003.
27. Defendant sent a Form 21 to Plaintiff, seeking him to agree to a payment for the 10 percent permanent partial disability rating to his back that Dr. Reeg previously assigned; however, the Form 21 contained an incorrect average weekly wage of $600.00. Although Plaintiff attempted to correct this matter with Defendant, this effort was without avail. Defendant's attempt to resolve part of the dispute concerning the compensability of Plaintiff's back claim via a Form 21 demonstrates that Defendant had knowledge of Plaintiff's back claim.
28. While the Form 28B purportedly closed out the claim, Defendant never paid Plaintiff for the 10 percent permanent partial disability rating previously assigned by Dr. Reeg, as of the time Plaintiff filed his claim for additional benefits related to his June 17, 2000 work injury. Therefore, the Form 28B did not resolve this claim, and the claim remains pending.
29. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's back claim is not time-barred, due to Defendant's knowledge of the back claim, via their Form 21 filing, and due to the fact that the issue concerning payment of the 10 percent permanent partial disability rating previously assigned by Dr. Reeg never got resolved.
30. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff is entitled to a five (5) percent permanent partial disability rating
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following: *Page 10 
 CONCLUSIONS OF LAW
1. Defendant is estopped from asserting N.C. Gen. Stat. § 97-24 as a bar to Plaintiff's claim. Plaintiff's back claim is not time-barred, due to Defendant's knowledge of the back claim, via their Form 21 filing, and due to the fact that the issue concerning payment of the 10 percent permanent partial disability rating previously assigned by Dr. Reeg never got resolved. N.C. Gen. Stat. § 97-47 (2007).
2. The greater weight of the evidence of record establishes no causal relationship between the July 17, 2002 reconstructive procedure performed by Dr. Scot Eric Reeg and Plaintiff's June 17, 2000 work injury.
3. Plaintiff is entitled to payment of permanent partial disability compensation at the rate of $588.00 per week for 15 weeks as a result of the five (5) percent permanent partial impairment rating to his back. N.C. Gen. Stat. § 97-31 (2007).
4. Plaintiff is not entitled to payment of medical expenses incurred or in any way related to the reconstructive surgery performed by Dr. Reeg. N.C. Gen. Stat. §§ 97-2(19); 97-25 (2007).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim for payment of medical expenses incurred or in any way related to the reconstructive surgery performed by Dr. Reeg must be, and the same is, DENIED. *Page 11 
2. Subject to a reasonable attorney's fee herein approved, Defendant shall pay permanent partial disability compensation to Plaintiff for 165 weeks, at the rate of $588.00 per week, for the five (5) percent permanent partial disability rating to Plaintiff's back.
3. A reasonable attorney's fee of 25 percent of the compensation awarded to Plaintiff in paragraph two (2), above, is hereby approved to be deducted from the lump sum due Plaintiff and paid directly to Plaintiff's counsel.
4. Defendant shall pay the costs of these proceedings.
This the ___ day of September 2008.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ DANNY LEE McDONALD COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER *Page 1